## ORDER

Randy Olen, Johnston, RI, for plaintiff.

Frank Crowley, Immigration and Naturalization Special Assist. U.S. Atty., Boston, MA, for defendant.

**Carlos Antonio HERNANDEZ**

v.

**Janet RENO, et al.**

**No. Civ.A. 97–11318–RGS.**

United States District Court,
D. Massachusetts.

Aug. 13, 1999.

*MEMORANDUM OF DECISION AND ORDER ON A PETITION FOR WRIT OF HABEAS CORPUS*

STEARNS, District Judge.

The petitioner, Carlos Antonio Hernandez, is a citizen of the Dominican Republic who immigrated to the United States in 1982. In 1989, Hernandez was convicted by a Louisiana court of distributing cocaine. Deportation proceedings were initiated on June 15, 1989. After an initial default and reopening of the case in 1991, an evidentiary hearing was held on September 4, 1992. Hernandez stipulated to

his deportability,[1] but sought discretionary relief under what was then section 212(c) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1182(c). Relief was denied and Hernandez appealed to the Board of Immigration Appeals (BIA). The BIA summarily dismissed the appeal on October 28, 1993, stating that the appeal failed to meaningfully identify any issues for review. No further appeal was taken in the thirty days allotted to aliens under a final order of deportation by INA, 8 U.S.C. § 1105a(a). Hernandez's order of deportation thus became final.

So things stood until May 20, 1997, when the Immigration and Naturalization Service (INS) served Hernandez with a so-called "bag and baggage" letter ordering him to report for deportation on June 10, 1997 (subsequently extended to June 11). On the day scheduled for deportation, Hernandez filed this petition for a writ of habeas corpus. The court, "while doubting [its] jurisdiction," stayed deportation "[g]iven the facial seriousness of petitioner's claim that the negligence of former counsel deprived him of his right to due process."

Thereafter, on September 11, 1997, the case was stayed at petitioner's request pending a decision by the First Circuit Court of Appeals in *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998), clarifying the retroactive effect of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 440(d) disqualified aliens convicted of controlled substances offenses from section 212(c) relief and had been interpreted by the Attorney General to apply to all pending cases. *Matter of Soriano*, Int. Dec. 3289, 1996 WL 4236888 (Op. Att'y Gen. June 27, 1996). The *Goncalves* decision was not,

however, handed down until May 15, 1998. On June 2, 1998, the court ordered the parties to brief the impact of *Goncalves* on petitioner's case. Hearing nothing within the fourteen days allotted, the court assumed the matter had been resolved, and as a housekeeping matter, on March 26, 1999, ordered the case dismissed.

On April 24, 1999, petitioner's counsel moved under Rule 60(b) to reinstate Hernandez's petition and to stay the recommenced execution of his deportation pending a ruling on the merits.[2] The court granted the motion and ordered a new briefing schedule.

The first and paramount issue for the court is that of jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). The focus of the jurisdictional question is on the impact of § 1252(g) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which by operation of IIRIRA § 306(c)(1) applies "without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings."[3] Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Exactly what Congress intended by this provision was a matter of much debate

---

1. Petitioner was automatically deportable as having been convicted of a controlled substances crime which also independently qualified as an aggravated felony. 8 U.S.C. § 1251(a)(11); 8 U.S.C. § 1101(a)(43).

2. Counsel maintains that he never received the court's June 2, 1998 Order. It appears

from the docket that counsel moved his offices without insuring that the docket reflected the change of address.

3. Section 1252(g) is an exception to the generally prospective nature of the IIRIRA's revised rules.

prior to the Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In the eyes of some courts, § 1252(g) completely extinguished § 2241 habeas jurisdiction in deportation cases. See *Richardson v. Reno*, 162 F.3d 1338, 1356–1360 (11th Cir.1998), *cert. granted, judgment vacated by* —— U.S. ——, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999); *LaGuerre v. Reno*, 164 F.3d 1035, 1038–1041 (7th Cir.1998). Others, notably the First Circuit in *Goncalves*, found the constitutional implications of a repeal of all judicial review to be troubling and best avoided. 144 F.3d at 122–123 (finding no express Congressional intent to preclude aliens from seeking a writ of habeas corpus under § 2241); *Sandoval v. Reno*, 166 F.3d 225, 236–238 (3d Cir.1999) (same). The *American–Arab* decision has not stilled the controversy.[4] After reconsidering *Richardson* in light of *American–Arab*, the Eleventh Circuit reaffirmed its holding that the IIRIRA repealed § 2241 habeas jurisdiction over removal proceedings although relying on the Supreme Court's characterization of § 1252(b)(9) "as an unmistakable 'zipper clause' that 'channels judicial review' of INS 'decisions and actions' exclusively into the [Court of Appeals] (instead of § 1252(G))." *Richardson v. Reno*, 180 F.3d 1311, 1314–15 (11th Cir.), quoting *American–Arab*, 119 S.Ct. at 943.[5] The Seventh Circuit, on the other hand, reaffirmed *LaGuerre*, holding that § 1252(g) eliminates § 2241 habeas jurisdiction in all cases to which it applies (although not direct review of "substantial" constitutional claims), *Singh v. Reno*, 182 F.3d 504, 507–09 (7th Cir.), while the Third Circuit reaffirmed *Sandoval* in *Catney v. INS*, 178 F.3d 190, 191–92 (3d Cir.).[6]

By holding that § 1252(g) does not apply to the "universe of deportation claims," 119 S.Ct. at 943, *American–Arab* considerably narrowed the sweep of § 1252(g)'s seemingly broad brush. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* The Court explained that Congress had good reason to focus its attention on these three actions. "At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which came to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience.... Since no generous act goes unpunished, however, the INS's exercise of this discretion opened the door to litigation in instances where the INS chose *not* to exercise it." *Id.* at 943–944. What *American–Arab* can be safely said to hold is that federal courts no longer have the power to second-guess discretionary

4. Because *American–Arab* arose in the context of a direct review of a selective enforcement claim, it did not address the impact of § 1252(g) on the survival of habeas jurisdiction except to note that "[t]here is disagreement on this point in the Courts of Appeals." *American–Arab*, 119 S.Ct. at 942 n. 7 (citing *Richardson* and *Goncalves* among other cases).

5. *Richardson* is the only post–*American–Arab* Court of Appeals case to date to be decided under the IIRIRA's permanent rules, hence the availability of § 1252(b)(9).

6. *Catney*, which was decided on May 25, 1999, curiously does not mention *American–Arab*. Two other post–*American–Arab* Court of Appeals decisions, *Mapoy v. Carroll*, 1999 WL 496204 (4th Cir.), and *Alvidres–Reyes v. Reno*, 180 F.3d 199, 1999 WL 436077 (5th Cir.), involved efforts by non-criminal aliens to stay a removal order to permit a motion to reopen a suspension of deportation hearing to be heard (*Mapoy*) and to compel the Attorney General to hear applications for suspension of deportation (*Alvidres–Reyes*). The *Mapoy* court held that because the motion for a stay was clearly related to the execution of a removal order, § 1252(g), as interpreted by *American–Arab*, divested the district court of habeas jurisdiction. *Alvidres–Reyes* held that the plaintiffs' suit for injunctive relief sought to require the Attorney General by judicial fiat to consider the plaintiffs' applications and therefore fell within § 1252(g)'s prohibition against judicial interference with the exercise of the Attorney General's executive discretion.

decisions taken by the Attorney–General in the exercise of her prosecutorial functions.[7]

■ Turning to the particulars of Hernandez's case, the issue would seem reasonably straightforward. Does the relief he seeks fall within the jurisdictional divestiture of § 1252(g) as interpreted by *American–Arab*, or does it fall within the penumbra of the § 2241 habeas jurisdiction posited by the First Circuit in *Goncalves?*[8] It seems clear that *Goncalves* envisioned the retention by the district court of habeas jurisdiction over claims of fundamental constitutional error. And a constitutional claim is presented by Hernandez's petition. He argues that the failure of his counsel to perfect his BIA appeal or to notice an appeal to the First Circuit deprived him of his Fifth Amendment right to due process. (The due process right petitioner claims to have lost is presumably the right to have the appeal of the denial of his 212(c) petition heard on the merits, although he devotes the bulk of his brief to the many errors that he believes his counsel made during the presentation of his section 212(c) petition and the alleged errors made by the Immigration Judge as a result).[9] Merely to give a claim a constitutional label, however, does not end the analysis because *American–Arab* makes clear that there are errors in deportation proceedings, even errors of a constitutional dimension, that a district court is powerless to correct, depending upon the context in which they occur. The focus therefore must be on the relief sought, and whether if it is granted, the court has trespassed on ground forbidden by § 1252(g).

A post-*American–Arab* case that would seem to provide support for Hernandez's petition is *Mustata v. U.S. Department of Justice*, 179 F.3d 1017 (6th Cir.1999). In *Mustata*, the petitioners sought a stay of deportation arguing that their counsel's ineffectiveness had destroyed the presentation of their claim for asylum in violation of their Fifth Amendment due process and Sixth Amendment [sic] rights. The district court dismissed the petition on grounds that it lacked jurisdiction because of § 1252(g). The Sixth Circuit reversed, holding that the petition did "not fall within any of the three Attorney General decisions or actions covered by § 1252(g)." *Id.* at 1022–23. The Court reasoned that the Mustatas were not challenging the Attorney General's decision to proceed against them or to adjudicate their case or even to remove them from the United States. "[T]he Mustatas are not claiming that the Attorney General should grant them discretionary, deferred-action-type relief. That is, they are not asking the Attorney General to exercise her discretion to allow them to remain in the United States.... The substance of their claim is that their counsel's failure to investigate and present relevant evidence resulted in a violation of their due process rights. Whether or not the Attorney General executes a removal order against the Mustatas is immaterial to the substance of this claim." *Id.*[10]

---

7. "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 944 n. 9.

8. While *Goncalves* holds that habeas review in the district court is available for at least some constitutional claims and for statutory claims based on "pure issues of law," 114 F.3d at 133, the holding is hollowed out at its core by *American–Arab*'s divestiture of federal court jurisdiction over challenges to the Attorney General's exercise (or non-exercise) of her prosecutorial discretion.

9. Because a deportation proceeding is civil in character, an alien has no Sixth Amendment right to be represented by counsel. *Lozada v. INS*, 857 F.2d 10, 13 (1st Cir.1988). Although the underlying rationale is not always explained, it seems generally accepted that an alien who chooses to engage the aid of counsel may challenge his counsel's effectiveness as a Fifth Amendment due process matter if the lawyer's deficient performance calls into question the fundamental fairness of the hearing. See *Motta v. District Director, I.N.S.*, 869 F.Supp. 80, 90–91 (D.Mass.1994).

Remaining in the United States is, of course, the relief that Hernandez seeks, by way of an order directing the Attorney General to cancel his removal and reinstate the appeal that he forfeited when his application for section 212(c) relief was denied.[11] His case is thus more like *Alvidres–Reyes v. Reno,* 180 F.3d 199 (5th Cir.). In *Alvidres–Reyes,* the petitioners brought a class action seeking to compel the Attorney General to consider their applications for suspension of deportation under the more generous pre-IIRIRA criteria. The Fifth Circuit dismissed the complaint "because § 1252(g) protects from judicial intervention the Attorney General's exercise discretion whether to prosecute and adjudicate removal cases by depriving the courts of jurisdiction to hear such litigation or any cause arising therefrom." *Id.* at 201. While observing that the plaintiffs had not in so many words sought an order directing the Attorney General to adjudicate their cases, the Court nonetheless looked to the practical effect of granting plaintiff's relief.

> If successful, however, plaintiffs' suit would compel the Attorney General to [adjudicate their deportability] in order to consider their applications for suspension of deportation. Thus, the plaintiffs' suit necessarily calls for judicial intervention to reverse the Attorney General's exercise of her discretion to not commence proceedings against the plaintiffs and to not adjudicate their deportations, which necessarily was included within her refusal to entertain their applications for suspension of deportations.

We conclude from the Supreme Court's discussion in *American–Arab,* and the authorities cited and quoted therein, that the Attorney General's executive discretion to decide or act to commence proceedings always has been considered inherently to include the ability to choose not to do so. Otherwise, the Attorney General would have no power of free decision or latitude of choice with respect to the commencement or deferral of removal proceedings.

*Id.* at 204–05 (footnote omitted).

█ Like suspension of deportation, section 212(c) relief, which is the ultimate relief sought here, falls directly within the "discretion-protecting provisions of § 1252(g)." *Alvidres–Reyes,* at 206. Thus, a petition seeking in effect to compel the Attorney General to reopen a section 212(c) hearing is beyond the power of a district court to grant. If there is an avenue of relief, it runs to the Court of Appeals. (Petitioner's alternative argument, that because his 212(c) application was filed prior to AEDPA's enactment, he falls within the protections of *Goncalves* is foreclosed by the First Circuit's decision in *Wright v. Ouellette,* 171 F.3d 8, 11 (1st Cir.1999)).

### ORDER

For the foregoing reasons, the Petition for Writ of Habeas Corpus is *DISMISSED.* Because the issue is not without doubt, removal will be *STAYED* for twenty-eight (28) days from the date of this opinion, unless sooner terminated by

---

10. There is a critical distinction between a request for section 212(c) relief and an asylum claim. Section 212(c) relief is entirely discretionary and the withholding of relief is not reviewable. Cf. *Goncalves,* 144 F.3d at 125, 133. An asylum claim, on the other hand, if well-founded, must be honored. The Attorney General has no discretion to refuse asylum to claimants who, for example, prove a well-grounded fear of persecution. Moreover, unlike the Mustatas, who were not pre-

sumptively deportable, Hernandez, by virtue of his controlled substances conviction, is.

11. Because Hernandez was under a final order of deportation prior to April 1, 1997, his recourse was to seek review in the Court of Appeals within thirty days of the BIA's rejection of his appeal. 8 U.S.C. § 1105a(a) (1993).

an order of this court, or extended by an order of the Court of Appeals.[12]

SO ORDERED.

---

12. The Court of Appeals might, for example, disagree with this court's view that Hernandez's petition seeks to intrude upon the Attorney General's executive discretion, or might, as did the Seventh Circuit in *Singh*, conclude that it retains jurisdiction to hear Hernandez's constitutional claim.