# United States Court of Appeals
## For the First Circuit

No. 99-2046
No. 99-2102

CARLOS ANTONIO HERNANDEZ,

Petitioner, Appellant,

v.

JANET RENO, ATTORNEY GENERAL OF THE UNITED STATES, ET AL.

Respondents, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Randy Olen for petitioner.
Papu Sandhu, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, Department or Justice,
with whom David W. Ogden, Assistant Attorney General, Civil
Division, and Emily Anne Radford, Assistant Director, were on
brief for respondents.

BOUDIN, Circuit Judge.  Carlos Hernandez is a native and citizen of the Dominican Republic who entered the United States as an immigrant in 1982.  In 1989, Hernandez was convicted in state court of distributing cocaine.  As a result, the INS commenced deportation proceedings against Hernandez, charging him with being removable under section 241 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1251 (1988), because his conviction qualified as an aggravated felony, id. § 1251(a)(4)(B), and a narcotics violation, id. § 1251(a)(11).  (U.S. Code references are to the 1994 edition unless otherwise indicated.)

In November 1989, Hernandez conceded deportability and applied for a waiver of deportation under INA section 212(c), 8 U.S.C. § 1182(c).  At his hearing which commenced in August 1990, Hernandez argued that his family ties to the United States, job history, and rehabilitation made him eligible for discretionary relief from deportation.  The immigration judge disagreed, denying Hernandez' request for waiver because the "adverse factors in [his] case so greatly outweigh[ed] the

social and human considerations presented." Hernandez was ordered deported on September 4, 1992.[1]

Five days later, Hernandez' counsel filed a timely notice of appeal with the Board of Immigration Appeals (the "Board"). The notice stated that a brief on the issues would be filed separately, but Hernandez' counsel failed to submit one. As a result, on October 28, 1993, the Board summarily dismissed the appeal, stating that Hernandez had failed to "meaningfully identify the particular basis" for his claim. 8 C.F.R. § 3.1(d)(1-a)(i)(A) (1993). Although under then-existing law Hernandez had the option of appealing the Board's decision to this court, no appeal was taken. See INA § 106(a), 8 U.S.C. § 1105a(a), repealed by Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 242, 110 Stat. 3009-546, -612 (1996) (codified at 8 U.S.C. § 1252 (Supp. II 1996)).

Why Hernandez did not pursue his remedies is unclear. Hernandez had arguments to make to the Board but none, on our preliminary review, had great promise of success. Hernandez' then counsel has since said that he and Hernandez agreed that no

_____

[1]There were three days of hearings conducted over the course of two years. Much of the delay resulted from requests by Hernandez' counsel for continuances and, in at least one instance, because Hernandez failed to appear at a scheduled hearing.

court appeal from the Board's decision should be taken because it would be hopeless and that it was more useful for Hernandez to defer any clear-cut affirmance and in the meantime accumulate "equities." But it is doubtful that Hernandez would endorse this description of what happened, nor is it certain what Hernandez was told at the time.

Nevertheless, the strategy--if there was one--was initially successful. For reasons not explained to us, no action was taken against Hernandez for almost four years. Then, in May 1997, the INS issued a so-called "bag and baggage" letter to Hernandez, which directed him to appear for deportation the following month. On the day of his scheduled deportation, Hernandez hired a new attorney who immediately filed a writ of habeas corpus in the district court, 28 U.S.C. § 2241, and a motion to reopen his case with the Board, 8 C.F.R. §§ 3.2(a) & (c) (2000); both pleadings claimed that Hernandez had been denied due process in the deportation proceedings because of prior counsel's ineffectiveness.

Although unsure of its jurisdiction, the district court stayed Hernandez' deportation based on the "facial seriousness" of his due process claim. Hernandez v. Reno, 63 F. Supp. 2d 99, 100 (D. Mass. 1999). At Hernandez' request, the district court also stayed his habeas proceeding in light of then-pending

litigation in which we proposed to consider, <u>inter alia</u>, whether newly-passed legislation barred section 212(c) discretionary relief for deportable criminals who had sought a waiver prior to the new restrictions. Thereafter, in <u>Goncalves</u> v. <u>Reno</u>, 144 F.3d 110, 133 (1st Cir. 1998), <u>cert. denied</u>, 526 U.S. 1004 (1999), we held that the new restrictions did not apply to such persons.

The district court then proceeded with Hernandez' petition but now found relief barred by an intervening decision by the Supreme Court, <u>Reno</u> v. <u>American-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 482-87 (1999), construing section 242(g) of IIRIRA, 8 U.S.C. § 1252(g) (Supp. II 1996). <u>Hernandez</u>, 63 F. Supp. 2d at 103. By its terms, that section precludes jurisdiction by any court, apart from direct court of appeals review as authorized in that section, over claims:

> by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Read literally, this language could easily be taken to bar district court habeas jurisdiction insofar as the "claim" related to any one of the three described types of "decision or action." The district court viewed the relief sought by Hernandez --effectively requiring the Board to reopen his

section 212(c) waiver case--as interfering with the Attorney General's decision to "adjudicate" cases.  Hernandez, 63 F. Supp. 2d at 103.  The court therefore dismissed Hernandez' petition for lack of subject matter jurisdiction but stayed its order to permit an appeal, finding the issue "not without doubt."  Id.

Hernandez now appeals, claiming that the district court's reading of section 242(g) and American-Arab is inconsistent with our later decision in Wallace v. Reno, 194 F.3d 279, 285 (1st Cir. 1999).  The government responds that the habeas petition was correctly dismissed for lack of jurisdiction for two other reasons:  because former section 106(a) of the INA, 8 U.S.C. § 1105a(a), made direct review the exclusive avenue to review deportation orders, and in the alternative, because Hernandez has failed to exhaust his administrative remedies, id. § 1105a(c).  The government also says that Hernandez has failed to show either ineffective assistance of counsel or that the immigration judge erred in denying discretionary relief to Hernandez.

We are not persuaded by either the district court's or the government's jurisdictional objections.  The district court's reading of section 242(g) is not without force, but it was rejected in Goncalves--based on an unwillingness to find an

implied repeal of habeas corpus. Goncalves, 144 F.3d at 119-23. Goncalves was reaffirmed in Wallace--notwithstanding American-Arab. Wallace, 194 F.3d at 284-85. Indeed, while American-Arab was not concerned with habeas, its surprisingly narrow reading of section 242(g) indirectly reinforces Wallace and Goncalves. The government itself agrees that American-Arab's reading of section 242(g) "does not divest the district court of jurisdiction."

The government relies instead on former section 106(a) of the INA. That section, now repealed but still pertinent to Hernandez' claim, see IIRIRA §§ 309(a) & (c)(1), 8 U.S.C. § 1101 note (Supp. II 1996), made court of appeals review the "sole and exclusive procedure" to review final orders of deportation. INA § 106(a), 8 U.S.C. § 1105a(a). But in the pertinent time frame, section 106 itself explicitly endorsed habeas corpus as a remedy, id. § 1105a(a)(10), and even if this were not so, the logic of Goncalves' objection to implied repeal of habeas applies with equal force where an asserted constitutional default by counsel forfeits direct review.

In the alternative, the government argues that Hernandez has failed to exhaust his administrative remedies. Under former section 106(a)(c), review of an order of deportation was barred if, inter alia, "the alien has not

-7-

exhausted the administrative remedies available to him as of right . . . ." 8 U.S.C. § 1105a(c). The government appears to rely both on Hernandez' past failure to utilize available remedies and on his present pending motion to reopen. It is useful to treat past and present remedies separately.

Starting with the past, at one time Hernandez did have at least two remedies as of right, namely, briefing a timely appeal to the Board and moving to reopen by September 30, 1996, 8 C.F.R. § 3.2(c)(2) (2000). Sometimes courts do talk of "failure to exhaust" past remedies that are no longer available, meaning either that the party did not seek the agency remedy at all or did not make a particular argument. E.g., Roman-Martinez v. Runyon, 100 F.3d 213, 220 (1st Cir. 1996). These are essentially arguments that a claim or contention has been waived or forfeited--which is quite different than saying that there is an existing agency remedy that should be invoked before turning to the courts.

However labeled, the government's objection based on now-forgone remedies essentially overlaps, in this case, with the "merits." Hernandez' central claim in the district court was that counsel's failure seriously to pursue an appeal to the Board, and his failure entirely to appeal to this court, created a constitutional defect. If this were so--and we will return to

-8-

the merits shortly--it would be very odd to say that counsel's <u>unconstitutional</u> conduct created a waiver, forfeit, or failure to exhaust that prevented his client from ever litigating that issue.  The same is true of the failure to move to reopen within the time limits.

This brings us back to the pending motion before the Board.  This is <u>not</u> a remedy "as of right" under former section 106(a)(6), because Hernandez' motion to reopen was filed long after the time period for such motions.  8 C.F.R. § 3.2(c)(2) (2000).  But to the extent that the Board does provide currently available remedies as a matter of grace, a court is free to require exhaustion of such remedies--not because of any jurisdictional objection or statutory command but simply because it makes sense.  <u>See</u> <u>McCarthy</u> v. <u>Madigan</u>, 503 U.S. 140, 144 (1992); Davis, <u>Administrative Law</u> § 15.2 (3d ed. 1994).

The Board, admirably in our view, has sought to cope with the type of problem raised in this case by setting up a procedure for respondents to seek reopening of deportation orders based on incompetence of counsel.  <u>In re Lozada</u>, 19 I. & N. Dec. 637, 639 (BIA 1988).  Recognizing that such claims are easily made and compromise finality, the Board's criteria require an affidavit describing the alleged agreement with counsel, notice to counsel (who can respond), and a statement

whether the alleged default by counsel has been reported to state authorities and, if so, with what result (and if not, why not).  Id.

In the ordinary case, we agree that the respondent must use the Board's own procedures to resolve his competency of counsel claims.  Absent a threat of immediate deportation, a district court should in general decline to entertain a habeas petition challenging competency of counsel.  See Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999).  Even if such a threat impends, the respondent still ought to show good cause why he has not previously sought a discretionary stay of deportation, as well as reopening, from the Board.  However, unless rigidly prescribed by statute, exhaustion may be excused where there is reason to do so.  See Sousa v. INS, 226 F.3d 28, 31-32 (1st Cir. 2000).

Here, Hernandez is threatened with immediate deportation and his petition to reopen has been pending with the Board for well over three years.  Cf. Dabone v. Karn, 763 F.2d 593, 597 n.2 (3d Cir. 1985) (holding that the Board's "failure to act within a reasonable period" on a motion to reopen may be treated as an "effective denial").  Under these circumstances, to await further action by the Board would, on the one hand, frustrate Congress' plain intent to expedite deportation of

-10-

aggravated felons, see IIRIRA § 304(a)(3), 8 U.S.C. § 1229(d)(1) (Supp. II 1996), and, on the other, risk deporting Hernandez without giving him an opportunity to make his constitutional objection in court. We therefore turn to the merits of the due process claim.

There is no Sixth Amendment right to counsel in deportation, which is a civil proceeding, but several courts of appeals (including this one) have said that where counsel does appear for the respondent, incompetence in some situations may make the proceeding fundamentally unfair and give rise to a Fifth Amendment due process objection. Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988). We have said that a process becomes fundamentally unfair when "the alien [is] prevented from reasonably presenting his case." Id.

There is one threshold issue. Hernandez has never had a legal defense to deportation. He does not say that he is not an alien or that he was wrongly convicted of a deportable crime. Rather, all that stands between him and deportation is his request for a section 212(c) discretionary waiver, based on the Attorney General's weighing of equities. It is this request for a discretionary waiver that Hernandez says his attorney mishandled.

The Eleventh Circuit has taken the view that waiver relief is so speculative and so much a matter of grace that "an attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation." Mejia Rodriguez v. Reno, 178 F.3d 1139, 1148 (11th Cir. 1999), cert. denied, 121 S. Ct. 563 (2000). Yet waivers are granted or withheld according to largely fixed criteria, Yepes-Prado v. INS, 10 F.3d 1363, 1365-66 (9th Cir. 1993), and have an enormous practical impact. We think it best to treat the speculative and discretionary character of waivers not as an absolute bar but as bearing on the likelihood that counsel's conduct affected the outcome.

Turning then to the due process claim itself, Hernandez did have a fair opportunity to present his waiver case to the immigration judge. There was a hearing, substantial testimony, and a reasoned decision. Hernandez says that his attorney erred during the proceedings, but these are garden-variety claims that counsel should have handled matters somewhat differently and in this context do not even approach a showing that Hernandez has been deprived of a constitutionally adequate opportunity to make

his case.[2]  Thus, everything turns on the claim that counsel's failure to brief the appeal to the Board and seek review in this court comprised such a deprivation.

Both steps may have been strategic--Hernandez' counsel so claims explicitly as to judicial review--but we will assume arguendo that attorney negligence is involved.  Even in a criminal proceeding, attorney negligence creates a constitutional flaw only if it is extreme and there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1983); Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999), cert. denied, 520 U.S. 1129 (2000).  We have reviewed the immigration judge's decision and cannot find any such "reasonable probability" that the result would have been different if counsel had carried through with an appeal to the Board or to this court.

To support his contrary claim, Hernandez points to two equitable considerations that he argues would have led to the grant of a waiver by the Board.  Hernandez says that the extent

_____

[2]Hernandez also points to errors made by the immigration judge concerning the length of time Hernandez' children were receiving welfare support, Hernandez' rehabilitation, and permitting Hernandez' wife to testify.  Even accepting these claims as true (and there is a serious question whether they are), such "mistakes" fall far short of a denial of due process. See Toscano-Gil v. Trominski, 210 F.3d 470, 474 (5th Cir. 2000).

of his family ties in the United States are an "unusual and outstanding equity" and that his "genuine rehabilitation" also weighed in favor of a waiver.  As to the first, Hernandez argues that he has sixty-five "close" family members who are either U.S. citizens or lawful permanent residents.  As evidence of the second, Hernandez points to his limited criminal history (one conviction), steady employment, community involvement, and removal of his family from welfare support.

Having been convicted of a serious drug offense, Hernandez needed to demonstrate "unusual or outstanding countervailing equities."  <u>Hazzard</u> v. <u>INS</u>, 951 F.2d 435, 438 (1st Cir. 1991).  The numerous relatives that Hernandez now cites as equities are more distant than those that the immigration judge <u>did</u> consider (his children, wife, mother, and sisters).  It is difficult to see why consideration of such attenuated relationships should alter the equitable balance.  As for rehabilitation, Hernandez' seems only to have seriously begun <u>after</u> deportation proceedings originally commenced in 1990.

Conversely, there is at least some evidence of other, less admirable behavior by Hernandez.  This led the immigration judge to say that even <u>accepting</u> that Hernandez had established unusual or outstanding equities, he still believed that a waiver

would not be justified.  In all events, we can identify nothing in Hernandez' case that leads us to believe that there is a "reasonable probability" that the result of the proceedings would have been different had an appeal been perfected.

Were this a criminal case, counsel's failure to comply with a defendant's request to appeal would be treated as prejudice per se.  Roe v. Flores-Ortega, 120 S. Ct. 1029, 1038-39 (2000).  But we are unwilling, unless directed to do so, to incorporate into civil deportation proceedings the whole apparatus of Sixth Amendment precedent.  But see Dearinger ex rel. Volkova v. Reno, 232 F.3d 1042, 1045-46 (9th Cir. 2000).  Our concern in the immigration context is not with the Sixth Amendment but with preserving a fair opportunity to have a waiver claim considered; it does not include an opportunity to tie up deportation proceedings in knots through collateral attacks on defects that would not plausibly have altered the result.

Whether or not Hernandez' counsel engaged in strategic behavior in this case, the threat is a very real one.  A convicted criminal sits in jail while his habeas petition is pending; someone threatened with deportation but at large has every incentive to string out the deportation process, especially after an initial adverse decision by the immigration

-15-

judge makes prospects of getting a waiver dim.  Sixth Amendment precedent is worth consulting where counsel's performance is attacked in a deportation proceeding, but it is not binding and should not be blindly imported wholesale.

There is an alternative reason in this case why the due process claim should fail even if we extended the prejudice per se notion from criminal convictions to review of waiver denials in deportations.  On September 4, 1992, the immigration judge denied Hernandez' request for waiver (Hernandez having conceded deportability in 1989).  Hernandez does not deny that he knew of that decision; on the contrary, he says--in a very cursory affidavit--that his then counsel assured him that he had appealed and would continue to pursue all avenues; after that, the affidavit indicates, Hernandez knew little more about what happened.  At most, it appears that Hernandez had a cursory conversation with his lawyer in 1995.

It is hard to stomach the idea that Hernandez could sit on his hands for almost five years and then say that he was unconstitutionally denied an opportunity to pursue an appeal from the denial of waiver.  Knowing that he had been denied a waiver and was subject to deportation, it would seem that Hernandez had some duty--as a condition of a successful due process claim--to monitor his lawyer's actions and assure that

his appeal was being pursued. Cf. Leblanc v. INS, 715 F.2d 685, 694 (1st Cir. 1983). So far as his affidavit reveals, he did nothing whatever after 1995 when he says that his then lawyer told him that there was "no word on the appeal."

Only in 1997, five years after the original denial of waiver (and on the day he was faced with a bag and baggage letter order) did Hernandez claim on collateral attack that all this time he has been denied an opportunity to appeal. What he now wants is a judicial stay pending his petition to the Board to reopen or a judicial determination providing him with a new opportunity to appeal to the Board. This is not due process but overkill of the kind that has led Congress increasingly to limit judicial review and to abolish waivers even for those who may fully deserve them.

Nothing in this opinion should be read as altering the status of Hernandez' pending motion to reopen. Although we can identify no due process violation in Hernandez' original proceedings, it is within the Board's power to reopen Hernandez' case, and to stay deportation pending its decision on the motion, if it thinks that the circumstances so warrant. We express no opinion as to these matters.

The district court's decision is affirmed and this court's September 9, 1999, stay of deportation is vacated.

-17-