# United States Court of Appeals
## For the First Circuit

No. 04-2206

ALI ABDUL KARIM,

Petitioner,

v.

ALBERTO GONZÁLES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

William P. Joyce and Joyce & Zerola, P.C. on brief for petitioner.
Thankful T. Vanderstar, Office of Immigration Litigation, Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Linda S. Wernery, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

September 22, 2005

**BOUDIN**, __Chief Judge__.  Ali Abdul Karim, petitioner in this court, is a native of Lebanon.  He was admitted to the United States on April 16, 1993, as a tourist authorized to stay for one month, but he did not depart or secure any change of status and remains in the United States today.  In January 2003, he was called for an interview with the Department of Homeland Security ("DHS") pursuant to its "special registration" program for nationals of certain designated countries.  Thereafter, the Immigration and Naturalization Service ("INS") began removal proceedings against Karim.

At the initial hearing in April 2003, Karim appeared with counsel, which he had not had at the DHS meeting, and conceded removability.  At the next hearing in June 2003, his new counsel, from the same law firm, asked for a postponement so he could explore whether Karim was perhaps a citizen of Liberia, where he had lived for a time with his family.

At the deferred hearing held in July 2003, his counsel first said that he would like to file and brief a motion to suppress on the ground that the DHS interview had "tainted" the process; to this the judge replied that removability had already been conceded at the initial hearing.  Counsel then asked to amend the earlier answer by denying removability, but he gave no clear basis for his motion nor any basis for establishing that Karim was not removable.

The immigration judge denied the request to amend, noting that removability had been conceded, and found that Karim was removable. The judge also denied a request for voluntary departure because Karim had no valid travel document, as his passport had expired. Karim appealed to the Board of Immigration Appeals ("BIA"), arguing that he should have been given leave to amend his pleadings and more time to develop an asylum claim, that the special registration program was unconstitutional, and--as to voluntary departure--that he had no travel document because DHS had seized his passport.

In a brief per curiam order, the BIA rejected the appeal. It said that Karim had had over three months between his notice to appear in the removal proceeding and the filing of his original pleadings, which was time enough to develop his objections to removal; that he had furnished no reason for the later request to amend his admission of removability; that his passport had expired so voluntary departure was not permitted; and that the INS had no authority over the special registration program whose constitutionality was being challenged. Karim has now sought review in this court.

Much of Karim's brief on appeal is general rhetoric about the need for reasoned agency decisionmaking. In fact, it is fairly easy to follow the reasoning of both the immigration judge and the BIA. That both decisions were short is largely a result of the

fact that Karim admitted removability at the outset and gave the immigration judge no good reason for allowing Karim to revisit that concession (which was made through counsel). As to voluntary departure, the main argument now pressed was not made to the immigration judge.

Turning to substance, Karim argues that the immigration judge failed to articulate and then apply the various factors that bear on whether to allow an amendment of the pleading. The obligation to explain and articulate depends importantly on the strength of the position being urged. Where no plausible reason is offered for a request, the word "no" is plainly sufficient. Even now, the brief provides no adequate explanation as to why Karim should have been allowed to withdraw his concession nor any reason to doubt that the concession was correct.

Karim says that the immigration judge and the BIA failed to consider an (alleged) lack of prejudice in granting a postponement. There is obvious prejudice to the hard-pressed immigration process in deferring for yet a third time an already twice-postponed proceeding and then using resources to conduct a full-fledged proceeding in the absence of any indication that the admission was mistaken. In any event, the failure to give an adequate reason for a postponement or amendment dooms it regardless of whether allowance would cause prejudice to the adversary.

Karim says that he did explain to the immigration judge that he wanted more time to investigate whether he was a citizen of Lebanon or Liberia. That is not accurate. Counsel told the immigration judge at the July hearing that the earlier postponement had been secured to investigate that issue and continued: "And, as I looked into that further, there is an association with Lebanon, so that this whole Liberia theory went out the door."

Next, Karim's brief criticizes the BIA because, in reviewing the denial of the request for voluntary departure, it ignored the fact that DHS had seized Karim's passport. The immigration judge was indeed told about the seizure but was also told that the passport had expired in 1994. Karim did not, so far as we can tell, urge the immigration judge to give him time to secure and renew the passport. In any event, by statute, this court lacks authority to review a refusal to allow voluntary departure. 8 U.S.C. § 1229c(f) (2000).

Finally, Karim says that the immigration judge failed to address his claim, by motion to suppress, that the removal proceeding was tainted by the fact that DHS had conducted an interview with Karim and secured admissions from him in the absence of counsel. A reading of the transcript raises doubts whether counsel properly preserved the claim at all, but that is beside the point. Any attack on the DHS interview was mooted by Karim's decision at the initial proceeding to concede removability.

Conceivably, although there is no proof or proffer to that effect, that concession may have been prompted by admissions made in the DHS interview; if so, the time to raise the issue (by motion to suppress or otherwise) was before making the concession. Otherwise, Karim's position is no better than that of a defendant who pleads guilty without reserving a Fourth Amendment claim and then argues that his plea was prompted by an unlawful seizure of evidence. The law is well settled that the unqualified guilty plea waives such objections to antecedent events. United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994).

We add, merely to avoid unwarranted assumptions, that it is far from clear that any flaws in the DHS interview would have precluded use of the information there obtained. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1050 (1984) (holding that the exclusionary rule does not typically apply in deportation proceedings). Nor is it clear why any admissions made there mattered: Karim does not claim to have American citizenship or any authorization to remain in this country past 1994, and one would expect that untainted government records could easily establish both points--the first by reference to his admission to the country as a visitor and the second by the usual "negative" search.

In closing, we add that there is no indication in this record that Karim ever had any valid defense to removability. This is not a case where obviously promising objections were forfeit or

waived or where there is any indication of a miscarriage of justice.

The petition for review is denied.