Shah Afridi NADIR, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 08–4120.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Jan. 12, 2010.

Opinion filed: Jan. 14, 2010.

Anser Ahmad, Esq., Harrisburg, PA, for
Petitioner.

Thomas W. Hussey, Esq., Tracie N. Jones, Esq., Ann C. Varnon, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Respondent.

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Shah Afridi Nadir petitions for review of a decision rendered by the Board of Immigration Appeals ("BIA") on September 11, 2008. For the reasons that follow, we will dismiss in part and deny in part the petition for review.

## I. *Background*

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. Nadir is a native and citizen of Pakistan. He came to the United States in October 1998 and overstayed his visa. In June 2005, Nadir applied for withholding of removal and protection under the Convention Against Torture ("CAT"). He claimed that, beginning in 1997, he suffered persecution and torture in Pakistan on account of his political opinion due to his longtime membership in the Pakistan People's Party ("PPP"). Among other things, Nadir claims that he was arrested in March 1997 and detained for one month, during which time he was beaten, tortured with electric shocks, and denied food.

After a hearing in November 2006, the Immigration Judge ("IJ") denied Nadir's application. Nadir appealed. On September 11, 2008, the BIA affirmed the IJ's decision and dismissed the appeal. This

timely counseled petition for review followed.

## II. *Analysis*

We generally review only final decisions by the BIA. *See Li v. Att'y Gen.,* 400 F.3d 157, 162 (3d Cir.2005); *Abdulai v. Ashcroft,* 239 F.3d 542, 548–49 (3d Cir. 2001). However, because the BIA deferred to several aspects of the IJ's findings and analysis, we have jurisdiction to review both decisions. *See Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004). We review legal conclusions *de novo, see Ezeagwuna v. Ashcroft,* 325 F.3d 396, 405 (3d Cir.2003), and uphold factual determinations if they are supported "by reasonable, substantial and probative evidence on the record considered as a whole." *Guo v. Ashcroft,* 386 F.3d 556, 561 (3d Cir.2004). Ultimately, this Court "must find that the evidence not only *supports* that conclusion [that the application should have been granted], but *compels* it." *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### A.

To qualify for withholding of removal, Nadir was required to demonstrate that he "more likely than not" will face persecution if deported to Pakistan. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Nadir attempted to establish his eligibility through testimony that he suffered past persecution in Pakistan on account of his PPP membership.[1] *See* 8 C.F.R. § 208.16(b) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). A successful showing of past persecution would have entitled Nadir to a

---

1. Nadir provided no documentary evidence to corroborate his claim that he was imprisoned and tortured for one month in Pakistan.

rebuttable presumption that he would also face future persecution if removed. *See* 8 C.F.R. § 208.16(b)(1)(i).

The IJ found Nadir's testimony to be not credible and denied Nadir's application for withholding of removal for that reason. The BIA affirmed the IJ's adverse credibility determination. Nadir argues that the IJ and BIA erred because he established past persecution through credible evidence.

Nadir faces a heavy burden. We have recognized that an IJ is normally in the best position to make a credibility determination and is "uniquely qualified to decide whether an alien's testimony has about it the ring of truth." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir.2003) (quoting *Sarvia–Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir.1985)). We review adverse credibility determinations for substantial evidence. *Chen v. Ashcroft*, 376 F.3d 215, 221–22 (3d Cir.2004). We will affirm the adverse credibility finding if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). To reverse, the evidence of Nadir's credibility must be so strong "that in a civil trial he would be entitled to judgment on the credibility issue as a matter of law." *Chen*, 376 F.3d at 222.

We have closely reviewed the record and conclude that the adverse credibility determination rests upon substantial evidence. Both the BIA and IJ provided numerous specific and cogent reasons for concluding that Nadir lacked credibility, all of which go to the "heart" of his claims.[2] *See Berishaj v. Ashcroft*, 378 F.3d 314, 323 (3d Cir.2004). Specifically, the IJ and BIA identified the following inconsistencies and implausibilities within Nadir's testimony and/or between Nadir's testimony and documentary evidence:

(1) Nadir claimed to be "Information Secretary" for his village's branch of the PPP, but Nadir submitted a letter from Saleem Rahman, the president of the PPP for Nadir's district, which indicated that Nadir was only a "simple member" of the PPP.[3] *See* A.R. 384.

(2) The Rahman letter states that the military regime "was after him to arrest him," but does not suggest that Nadir was previously arrested, although it would be reasonable to presume that Rahman would have mentioned a prior arrest. A.R. 92 (IJ decision at 6); A.R. 384.

(3) The Rahman letter indicates that the military regime raided Nadir's home several times for the purpose of finding and arresting him. A.R. 384. Nadir did not mention any raids in his testimony or written statement.

(4) Nadir testified inconsistently about the sequence of events after his im-

---

**2.** Prior to May 2005, an adverse credibility determination could only be based upon inconsistencies that went to the "heart" of the individual's claim. *See Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). The REAL ID Act, which applies to Nadir's case, modifies that standard by providing that "credibility determinations may be made 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.' " INA § 208(b)(1)(B)(iii) [8 U.S.C. § 1158(b)(1)(B)(iii) ]. This Court has not yet upheld the new provision. Here, however, the change in the standard is irrelevant to the outcome, because the IJ and BIA both concluded that the credibility problems were sufficiently consequential to meet the pre-REAL ID Act standard. Neither party has disputed that aspect of the credibility determination.

**3.** Apart from his own testimony and statement, the Rahman letter is the only evidence that Nadir submitted to corroborate his individualized persecution claim.

prisonment. Specifically, he first testified that he returned home after his release to recover from his injuries. He later testified that he went to Karachi to hide, then boarded a ship, and only later returned home.

In response, Nadir provides a series of conclusory and unsupported arguments proposing that each credibility finding has an alternative explanation that supports Nadir's claim rather than undermines it.[4] However, the Supreme Court has instructed that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Nadir has not demonstrated that any of the IJ's findings of fact were clearly erroneous. His contention that there could be other plausible interpretations of the evidence does not undermine the adverse credibility determination.

"An alien's credibility, by itself, may satisfy his burden, or doom his claim." *Dia v. Ashcroft,* 353 F.3d 228, 247 (3d Cir.2003) (en banc). In this case, the adverse credibility determination dooms Nadir's claim. Nadir failed to meet the burden of supporting his application for withholding of removal through credible testimony.[5] *See Mulanga v. Ashcroft,* 349 F.3d 123, 133 (3d Cir.2003).

### B.

"An applicant for relief on the merits under [the CAT] bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Sevoian v. Ashcroft,* 290 F.3d 166, 174–175 (3d Cir.2002). To meet this burden, the applicant must present objective evidence, *Zubeda v. Ashcroft,* 333 F.3d 463, 471 (3d Cir.2003), including evidence of past torture inflicted upon the applicant and relevant information regarding conditions in the country of removal. *See Au-*

4. Perhaps in an effort to show why his proposed explanations lack record support, Nadir argues that he was not permitted to address the credibility findings because "the DHS attorney continued to badger him and the Judge also joined in by telling Petitioner that he would pretermit his applications for relief if he did not stop interrupting." Petitioner's Brief at 15. The record does not support Nadir's claim that he was prohibited from presenting testimony. To the contrary, the record reflects that Nadir himself repeatedly interfered with the proceedings. Nadir interrupted by providing answers to counsel's questions before the interpreter could complete his translation. *See* A.R. 163–66. The IJ repeatedly asked Nadir to allow the interpreter to finish before answering. Because Nadir continued to interrupt, the IJ eventually admonished, "if you do this one more time, I will consider pretermitting this application and deporting you ... Because I will consider this an intentional interference with the Court's ability to conduct a hearing on your behalf." A.R. 166; *see also* A.R. 172 ("Your repeated interruptions of the interpret-

er are preventing the Court from getting a full translation of what you're saying."). The IJ's reasonable efforts to maintain courtroom control by asking Nadir to refrain from persistent interruptions does not undermine the evidentiary record or the IJ's conclusions based upon it.

5. Nadir contends that his supporting evidence "also support[s] a finding that there is a pattern or practice of persecution against PPP members in Pakistan, which further supports his application for withholding of removal...." Petitioner's Brief at 18. However, Nadir never presented a "pattern or practice" claim to the IJ or BIA. *See* A.R. 92 (IJ Decision at 6) ("Respondent has not presented any alternative grounds to establish it is more likely than not he will be subject to persecution in Pakistan."). Because he has raised it for the first time in this Court, the claim is unexhausted and we will dismiss it for lack of jurisdiction. *See* INA § 242(d)(1) [8 U.S.C. § 1252(d)(1)]; *Abdulrahman,* 330 F.3d at 594–95.

*guste v. Ridge*, 395 F.3d 123, 134 (3d Cir. 2005). A denial of CAT relief, like withholding of removal, is subject to review under the deferential substantial evidence standard. *Zubeda*, 333 F.3d at 471.

■ Relying upon our decision in *Zubeda*, Nadir argues that the IJ and BIA improperly denied his CAT claim by exclusively relying upon the adverse credibility determination. Petitioner's Brief at 16; *Zubeda*, 333 F.3d at 476 ("[C]redibility for purposes of establishing . . . withholding of deportation claims does not defeat [the] ability to 'meet [the] burden of proof' under the Convention Against Torture."). We disagree. The IJ properly considered "all evidence relevant to the possibility of future torture."[6] 8 C.F.R. § 208.16(c)(3).

The IJ expressly discussed Nadir's documentary evidence of country conditions in Pakistan, including the most recent State Department Report. *See* A.R. 94 (IJ Decision at 8). Among other things, the IJ found that the report did not indicate that Nadir's PPP membership would automatically render him subject to imprisonment in Pakistan, and that, although high-ranking members of the PPP might face such risks, Nadir failed to establish that he is more than a "simple member" of the PPP. *See id.* In addition, the IJ found that, even if Nadir could establish an increased risk of arrest in Pakistan due to his PPP membership, that would not be sufficient to compel a conclusion that he would face torture in Pakistan. *Id.*

Thus, based upon the record as a whole, the IJ concluded that Nadir's proffered evidence "does not establish it is more likely than not he would be tortured if removed to Pakistan." *Id.* The BIA affirmed the IJ's approach. *See* A.R. 3 (BIA Decision at 2). We conclude that the decision to deny CAT relief rests upon substantial evidence.

## C.

Nadir argues that the IJ violated his Due Process rights because Nadir indicated during the Government's cross-examination that he was suffering from chest pains. He contends that "this clearly cut Petitioner's testimony short" and that the IJ should have continued the proceedings rather than concluding them and rendering a decision. The Government responds that Nadir's claim lacks factual support because, although Nadir initially accepted the IJ's offer to continue the hearing, *see* A.R. 176–80, when the IJ informed the parties that a continuance would require a *de novo* hearing,[7] both parties agreed to conclude questioning and proceed on the record as it stood. *See* A.R. 184–85.

We generally lack jurisdiction to review claims that were not administratively exhausted. *See* INA § 242(d)(1) [8 U.S.C. § 1252(d)(1)]. Nadir never argued to the IJ or to the BIA that he should have been granted a continuance due to his health problems. For instance, in the hearing before the IJ, Nadir's counsel did not request a continuance. Instead, counsel expressly indicated to the IJ that he had no further questions to ask Nadir. A.R. 185

---

6. As part of this analysis, the IJ properly considered whether Nadir presented evidence of past torture. Such evidence is relevant to the determination of whether an individual will "more likely than not" be tortured if removed. *See* 8 C.F.R. § 208.16(c)(3)(i); *Zubeda*, 333 F.3d at 478. For essentially the same reasons that he did not present credible evidence of past persecution, the IJ concluded that Nadir did not present credible evidence

of past torture. This assessment also rests upon substantial evidence.

7. The IJ informed the parties that he was visiting from another city and would be unable to appear at the continued hearing; accordingly, if continued, none of Nadir's testimony from that day would be considered and a *de novo* hearing would be ordered. A.R. 183.

("JUDGE TO MR. FELIXON: [D]oes respondent's counsel want to ask any questions on redirect? MR. FELIXON TO JUDGE: No. I will not ask any more questions."). Thus, not only does the record seriously undermine the factual underpinnings of Nadir's Due Process claim, it also demonstrates that Nadir did not previously raise the issue.[8] Accordingly, we will dismiss this claim for lack of jurisdiction. *See Abdulrahman,* 330 F.3d at 594–95.

### D.

▮ Finally, the IJ concluded that Nadir was statutorily ineligible for voluntary departure because Nadir "has failed to present the Court with a valid passport." Nadir claims, without record support, that the Government had his passport in its custody but failed to bring it to the hearing. In response, the Government argues that we lack jurisdiction to consider this claim. Under INA § 240B(f) [8 U.S.C. § 1229c(f)], "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure...."

Pursuant to INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)], judicial review is not precluded where a petitioner raises a constitutional claim or question of law. Here, Nadir has failed to present a constitutional claim or question of law.[9] *See, e.g., Karim v. Gonzales,* 424 F.3d 109, 111–12 (1st Cir.2005) (no jurisdiction over claim that IJ erroneously concluded that petitioner lacked a valid travel document). We therefore lack jurisdiction over this claim and will dismiss it. INA § 240B(f) [8 U.S.C. § 1229c(f)].

### III. *Conclusion*

For the foregoing reasons, we will dismiss the petition for review to the extent that we lack jurisdiction over certain claims. We will deny the petition for review in all other respects.

---

8. Generally, constitutional claims are beyond the BIA's jurisdiction and not subject to the exhaustion requirement. *Bonhometre v. Gonzales,* 414 F.3d 442, 448 n. 7 (3d Cir.2005). However, there is an exception for claims that could have been corrected by the BIA. *Khan v. Att'y Gen.,* 448 F.3d 226, 236 n. 8 (3d Cir.2006) (IJ's allegedly erroneous denial of a continuance is a procedural error that can be addressed by the BIA on appeal). Nadir's claim falls within this exception.

9. Even if he had attempted to do so, Nadir would not be able to state a colorable constitutional claim based upon the IJ's alleged error. For instance, in *Carcamo v. U.S. Dep't of Justice,* 498 F.3d 94, 98 (2d Cir.2007), the Court of Appeals for the Second Circuit considered a claim that a denial of voluntary departure caused a deprivation of Due Process because it was based upon an allegedly erroneous finding of fact. *See id.* at 98. The *Carcamo* court concluded that "absent clear proof that the factual basis for an IJ's decision was unambiguously contradicted by the record, a petitioner raises no 'constitutional claim[] or question[] of law' for us to review." *Id.* (We note that, in Nadir's case, the IJ's finding that Nadir did not present a valid passport is *not* unambiguously contradicted by the record.) Similarly, the Court of Appeals for the First Circuit has held that a petitioner cannot circumvent the jurisdictional bar by claiming that Due Process required a hearing about the Government's allegedly unfair seizure of the petitioner's passport, because there is no Due Process right to voluntary departure. *See Kandamar v. Gonzales,* 464 F.3d 65, 69 (1st Cir.2006) ("[T]he IJ succinctly explained that the lack of a passport or any other travel document precluded voluntary departure. No greater hearing or rationale was necessary on the point.").