# United States Court of Appeals
## For the First Circuit

No. 13-1208

ANOLDO URIZAR-CARRASCOZA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

John P. Garan on brief for petitioner.
Sabatino F. Leo, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Stuart F. Delery, Principal Acting Assistant Attorney General, Civil Division, and Ernesto H. Molina, Jr., Assistant Director, on brief for respondent.

August 12, 2013

**LYNCH, Chief Judge**.  On September 27, 2010, an immigration judge (IJ) denied Anoldo Urizar-Carrascoza's applications for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(i); permission to reapply for admission pursuant to 8 U.S.C. § 1182(a)(9)(A); and a waiver of his unlawful presence pursuant to 8 U.S.C. § 1182(a)(9)(B)(v).  Urizar-Carrascoza had sought this relief in support of his adjustment of status petition pursuant to 8 U.S.C. § 1255(a).

Urizar-Carrascoza appealed the IJ's decision, and on January 11, 2013, the Board of Immigration Appeals (BIA) dismissed his appeal.  Urizar-Carrascoza now timely petitions for review of BIA's decision.  We deny the petition.

I.

A.      Factual Background and Procedural History

Urizar-Carrascoza is a native and citizen of Guatamela who first entered the U.S. without inspection in 1995 through Tucson, Arizona.  Urizar-Carrascoza was apprehended by immigration officials at that time and detained in El Paso, Texas, where he was held in custody for thirteen days.  He then posted a $1,500 bond and was released from custody; as he was released from custody, he was personally served with a notice to appear (NTA).  However, Urizar-Carrascoza did not appear at any proceedings related to this NTA; he alleged that he "never received any notices," though he gave his address to the authorities upon his release from custody

and continued living at that address for a year and a half. Urizar-Carrascoza conceded that he knew there were proceedings against him to remove him from the U.S., and that he was due back in court at some point, but he stated that he never contacted the immigration authorities to find out when his next court date would be. Urizar-Carrascoza was ordered deported in absentia on July 27, 1995, though he was never actually deported from the U.S. He claimed that he did not learn he had been ordered removed until he applied to adjust his status and appeared for an immigration interview in 2004.

In 1997, Urizar-Carrascoza married a legal permanent resident in Providence, Rhode Island, and in 1998 his wife gave birth to their first child, a U.S. citizen, in Providence. Urizar-Carrascoza returned to Guatemala in 1999. In 2000, he applied in person at the U.S. embassy in Guatemala for a visa to return to the U.S. Urizar-Carrascoza testified that he was interviewed by a U.S. government official, and that he did not tell the official that (1) he had been detained by U.S. immigration authorities; (2) he had been ordered removed from the U.S.; or (3) he was married. Urizar-Carrascoza stated that no official asked him for this information, and that he was not required to fill out a visa application in order to apply for a visa. Urizar-Carrascoza was awarded the visa and used it to travel to the U.S. several times between 2000 and 2002. He stated that in the course of using this visa, he never

told any U.S. government officials that he had been detained or ordered deported by U.S. immigration authorities, or that he was married.

Urizar-Carrascoza most recently entered the U.S. in August 2002, and has not left the U.S. since that entry. He stated that he decided to overstay his visa because his wife was due to give birth to their second child in October 2002, and he did not want to leave her alone. Urizar-Carrascoza's wife gave birth to a second child in 2002 and to a third child in 2009, both in Providence, Rhode Island.

On December 3, 2001, Urizar-Carrascoza's wife became a U.S. citizen. In May 2003, she filed a petition for alien relative on Urizar-Carrascoza's behalf (Form I-130), and Urizar-Carrascoza filed an application to adjust his status (Form I-485). In his Form I-485, Urizar-Carrascoza disclosed that he had been arrested in Arizona in 1995 by immigration authorities, but did not disclose that he had been ordered removed from the United States. Urizar-Carrascoza had an immigration interview regarding his application on June 3, 2004, and testified that he learned for the first time at this interview that he had been ordered deported in absentia in 1995.

That day, the Department of Homeland Security (DHS) served Urizar-Carrascoza with an NTA charging that he was removable as an alien who "procured [his] admission, visa, adjustment, or

other documentation or benefit by fraud or by willfully misrepresenting a material fact, to wit: Being ordered deported from the United States on 07/27/1995," pursuant to 8 U.S.C. § 1227(a)(1)(A). At removal proceedings on November 17, 2004, Urizar-Carrascoza, by counsel, admitted these allegations and conceded the charge of removability. The following exchange occurred between Urizar-Carrascoza's attorney and the IJ:

Judge:    It says here he, he's charged with entry by fraud. Okay. So you're admitting that he did enter by fraud --

Counsel:  Yes, Your Honor.

Judge:    -- but you want a waiver.

Counsel:  Yes, Your Honor.

Later at the same hearing, the following exchange occurred:

Judge:    . . . And you, you didn't know that he'd been previously ordered deported?

Counsel:  No. I could find, I could find no evidence of that and he was unclear of the circumstances.

At further removal proceedings on February 15, 2006, Urizar-Carrascoza's attorney stated that "I'm not convinced that [Urizar-Carrascoza's I-130 application] is going to get approved, given the history of the case. He attained his nonimmigrant visa by fraud." At continued removal proceedings on April 8, 2009, Urizar-Carrascoza's attorney stated that Urizar-Carrascoza was applying for permission to reapply for admission (Form I-212) and for a waiver of inadmissibility (Form I-601): "[t]he I-212 covering the previous deportation and the I-601 for the unlawful presence

-5-

and for any type of . . . . misrepresentation on the B-2 visa."  In April 2009, Urizar-Carrascoza filed these applications.

On October 26, 2009, DHS lodged an additional charge against Urizar-Carrascoza, alleging that he was removable pursuant to 8 U.S.C. § 1227(a)(1)(B), because he "remained in the United States beyond the period of [his] authorized stay."  At removal proceedings held that day, Urizar-Carrascoza by counsel admitted these allegations and conceded the additional charge of removability.

A merits hearing was held in Urizar-Carrascoza's removal proceedings on September 27, 2010, at which Urizar-Carrascoza testified as described above.  He did not, however, withdraw his concessions that he was removable on the basis of fraud and unlawful presence.  The government, likely in reliance upon Urizar-Carrascoza's admission of fraud, did not submit into evidence a copy of Urizar-Carrascoza's 1995 deportation order, nor did it submit any nonimmigrant visa application filed by Urizar-Carrascoza.

B.        The IJ's Decision and the BIA's Affirmance Thereof

On September 27, 2010, the IJ denied Urizar-Carrascoza's applications for waivers of inadmissibility relating to fraud and unlawful presence, and also denied his application for permission to reapply for admission.  The IJ also denied Urizar-Carrascoza's application to adjust status.  The IJ granted voluntary departure

to Urizar-Carrascoza, but issued an alternate order of removal to Guatemala in the event Urizar-Carrascoza failed to comply with the voluntary departure order.

The IJ found that when Urizar-Carrascoza applied for a U.S. visa in 2000, he did not reveal to the consular officer that he had a wife and a U.S. citizen child, both of whom were in the United States. The IJ also found that Urizar-Carrascoza failed to reveal to U.S. consular officials that he had previously been in the U.S. for four years, and that he had been ordered removed from the U.S. The IJ acknowledged that the government had not submitted any nonimmigrant visa application filed by Urizar-Carrascoza, but stated that he was "entitled to take judicial notice of the fact that a nonimmigrant visa application is required of all applicants who come to the United States with a visitor's visa, except for those perhaps who come under the Visa Waiver Program." The IJ also found that "it is likely that the respondent came to the United States [in 2002] with the intention of remaining in this country for the purpose of becoming a permanent resident."

The IJ noted "that the respondent has conceded his fraudulent behavior" and that "[t]he respondent's admission of fraud is well grounded." The IJ stated that Urizar-Carrascoza's "efforts to minimize his fraud are particularly disturbing." The IJ then found:

> [I]t is extremely doubtful if any set of circumstances exist in which the respondent would have been allowed to

come to the United States as a visitor if he had revealed that he had been in the United States for four years illegally, that he was married and that his wife was in the United States, likely as a permanent resident, and that he had a United States citizen child.

The IJ stated that if either the fraud waiver or the unlawful presence waiver were the only waiver Urizar-Carrascoza was applying for, he might be entitled to have his application granted. However, the IJ found that "[t]he respondent says that he never received notice [of his 1995 removal proceedings] and this is highly unlikely, in that he indicated he lived at that address for a year and a half and he was ordered to be deported in July of 1995." The IJ thus found "a culmination of factors which reflect an intention and plan on the part of the respondent to circumvent the Immigration laws in order to gain permanent residence in this country," and that Urizar-Carrascoza had "gained all of the equities which he contends should allow him to be excused from his fraud by virtue of having engaged in that fraud." Finding that Urizar-Carrascoza's wife had support systems in the U.S. and was "young and healthy," and that Urizar-Carrascoza would be able to "participate in the orderly Immigration process" after removal, the IJ denied Urizar-Carrascoza's applications for waivers and for permission to reapply as a matter of discretion, and granted voluntary departure.

Urizar-Carrascoza appealed the IJ's decision, and on January 11, 2013, the BIA dismissed his appeal. The BIA rejected

Urizar-Carrascoza's claim that DHS failed to establish that he was inadmissible by virtue of fraud and that he therefore did not require a fraud waiver; it also rejected his contention that the IJ failed to explain his decision, as a matter of discretion, to deny Urizar-Carrascoza's applications.

## II.

Where the BIA issues its own opinion, we review both that opinion and any portion of the IJ's opinion that the BIA adopted. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004). Where we have jurisdiction to review the BIA's decisions, we subject its factual determinations to deferential review under the substantial evidence standard, id. at 5, meaning that we uphold these determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

Urizar-Carrascoza makes two arguments in his petition for review: (1) the BIA erred in finding that he was removable due to having gained admission to the U.S. by fraud; and (2) the BIA erred in concluding that the IJ properly analyzed the facts in denying his applications for waivers of inadmissibility and permission to reapply for admission.

A.          The Agency's Finding of Removability Due to Fraud

The Immigration and Nationality Act (INA) provides that "[a]ny alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be

removed if the alien is within one or more of the following classes of deportable aliens," which includes "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."  8 U.S.C. § 1227(a)(1)(A).  The INA classifies as inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."  8 U.S.C. § 1182(a)(6)(C)(i).

In removal proceedings, the government has the burden of "establish[ing] the facts supporting deportability by clear, unequivocal, and convincing evidence."  Woodby v. INS, 385 U.S. 276, 277 (1966).  However, "[i]f the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent."  8 C.F.R. § 1240.10(c).

Substantial evidence supported the agency's determination that Urizar-Carrascoza was removable as an alien who procured a visa by fraud.  Urizar-Carrascoza twice conceded, by counsel, that he was removable on the basis of fraud.  Urizar-Carrascoza argues that the first concession, at the November 17, 2004 hearing, was

"de facto withdrawn just moments after it was made," when his counsel said that Urizar-Carrascoza "was unclear of the circumstances." However, reading this statement in context makes clear that his client was unclear about the circumstances of the order of deportation, and not his concession of fraud in procuring a visa.

Urizar-Carrascoza does not claim that he ever explicitly withdrew his concession to the charge of fraud. Notwithstanding Urizar-Carrascoza's testimony at the September 27, 2010 merits hearing, the IJ was entitled to "rel[y] upon [his] concession to the facts alleged in the NTA in determining that he was removable as charged." Karim v. Mukasey, 269 F. App'x 5, 8 (1st Cir. 2008).

B.        The Agency's Denial of Urizar-Carrascoza's Applications for Waivers and for Permission to Reapply

The INA provides that "[n]o court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver" relating to fraud or unlawful presence. 8 U.S.C. § 1182(a)(9)(B)(v), 1182(i)(2). Urizar-Carrascoza concedes that this court likewise has no jurisdiction over decisions regarding permission to reapply for readmission to the United States. See Andrade v. Attorney Gen. of U.S., 312 F. App'x 452, 454 (3d Cir. 2008) (concluding that court lacks jurisdiction over agency's denial of petitioner's application to reapply for admission). However, 8 U.S.C. § 1252(a)(2)(D) also provides that:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Urizar-Carrascoza identifies no "constitutional claims or questions of law" implicated by the agency's decisions regarding his applications for waivers and for permission to reapply for admission. Instead, he relitigates whether the factors relevant to this discretionary relief were appropriately weighed by the IJ and BIA, and whether the agency's factual findings were accurate. We lack jurisdiction to entertain these arguments.

### III.

Urizar-Carrascoza's petition for review is <u>denied</u>.