# United States Court of Appeals
## For the First Circuit

No. 13-1583

DIONE PEREIRA LIMA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Thompson, <u>Circuit Judge</u>,
Smith, <u>District Judge</u>.[*]

<u>Jeffrey B. Rubin</u> on brief for petitioner.
<u>Stuart F. Delery</u>, Assistant Attorney General, <u>Linda S. Wernery</u>, Assistant Director, and <u>Theodore C. Hirt</u>, Senior Litigation Counsel, Office of Immigration Litigation on brief for respondent.

July 8, 2014

_____

[*] Of the District of Rhode Island, sitting by designation.

**THOMPSON, Circuit Judge.** "As we must account for every idle word, so must we account for every idle silence." Benjamin Franklin's words ring true for Petitioner Dione Pereira Lima, who struggles mightily to take back his words in the proceedings below, while simultaneously attempting to assert new claims of error. In this challenge to a final removal order requiring him to return to Brazil, Lima attempts to undo his attorneys' concessions of removability. He further seeks to argue--for the first time--that the Immigration Judge violated his due process rights by denying his motion to continue the proceedings below and by failing to permit him to amend his written pleadings. We deny the petition for review.

## I. BACKGROUND

Lima is a native and citizen of Brazil who entered the United States on or about December 16, 2004. He adjusted status to that of lawful permanent resident on January 27, 2009. Later that year, Lima was arrested and charged with breaking and entering in the daytime in violation of Mass. Gen. Laws ch. 266 § 18.[1] Brought before the Malden District Court on December 15, 2009, Lima

---

[1] Mass. Gen. Laws ch. 266 § 18 provides, in pertinent part, "[w]hoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship, or motor vehicle or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years."

admitted facts sufficient for a finding of guilt. The court ordered the case to be continued without a finding for two years, and directed Lima to pay restitution of approximately $6,220.00.

Lima was arrested a second time in December 2010, this time on suspicion of breaking into cars, and charged with another violation of Mass. Gen. Laws ch. 266 § 18. On January 4, 2011, he appeared again in the Malden District Court and admitted to facts sufficient for a finding of guilt. This time, he received two years of probation.[2]

Lima's convictions quickly resulted in consequences beyond probation. On February 11, 2011, the Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA") charging him as removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(ii) for being convicted, at any time after admission into the United States, of two crimes involving moral turpitude. A series of hearings and appeals regarding Lima's

---

[2] 8 U.S.C. § 1101(a)(48)(A) defines a conviction for immigration purposes as "a formal judgment of guilt of the alien entered by a court, or if adjudication of guilt has been withheld, where--
    (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
    (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed."

Lima does not dispute that the dispositions of his criminal cases are convictions for immigration purposes.

removability ensued. Because of their relevance to our decision today, we provide the following summary of events.

After an initial hearing at which an Immigration Judge ("IJ") gave Lima additional time to secure legal representation, counsel appeared on March 3, 2011. During the course of proceedings that day, counsel told the IJ that Lima "has [been convicted of] two crimes of moral turpitude, which he has a breaking and entering of a house and breaking and entering of a vehicle." Lima's attorney went on to submit written pleadings conceding the NTA's allegations and admitting that Lima was removable as charged. Counsel explained that Lima intended to apply for asylum and withholding of removal. The IJ raised some concern as to whether Lima would be eligible for asylum and asked whether he was "trying to do anything with the convictions," to which counsel responded in the affirmative. He further stated that he would "have [Lima] come back in to submit the applications" for asylum and/or withholding of removal, and adjourned the proceedings until April 21, 2011.

Upon his return, and in spite of his past representations, defense counsel reported now that Lima would not be applying for asylum or withholding of removal after all. The IJ scheduled the next hearing, at which Lima was to appear in person,

for May 5. Sometime thereafter, Lima discharged his original attorney and hired new counsel.[3]

Lima, with his new attorney beside him, appeared before the IJ on May 5. Addressing Lima's change in representation, counsel explained that Lima "did not agree with the course of action that his previous counsel wanted to take on the case and he seeked [sic] our office to represent him from this point forward." She never denied or disavowed Lima's first attorney's admission that his 2009 conviction was for breaking into a "house." She did, however, request a continuance so that Lima could move to vacate both convictions in the Malden District Court. Counsel stated that Lima had not been advised of the immigration consequences of pleading to the criminal charges and would, therefore, seek to overturn them pursuant to the Supreme Court's ruling in Padilla v. Kentucky.[4]

The IJ first noted that Lima had previously indicated he would accept a removal order. He denied Lima's motion to continue, observing that he did not know how long it would take the Massachusetts courts to dispose of Lima's Padilla motions. The IJ

---

[3] Lima's new attorney continues to represent him before this court.

[4] In Padilla v. Kentucky, the Supreme Court held that the Sixth Amendment requires an attorney representing a noncitizen in a criminal proceeding to advise her client about the immigration consequences that may result from a conviction. 130 S. Ct. 1473, 1484-86 (2010).

proceeded to find Lima removable by clear and convincing evidence based on Lima's "admissions, as well as his concession of removability." The IJ then ordered Lima removed to Brazil.

Lima appealed to the Board of Immigration Appeals ("BIA"), taking the position that the IJ erred in not granting him a continuance to collaterally attack his state court convictions. Notably, Lima's brief to the BIA contains the explicit statement that Lima "is removable for two convictions for which [Lima] is actively pursuing post-conviction relief." This was the sole ground Lima advanced in favor of reversal. The BIA upheld the removal order on August 22, 2011.

That same day, the Malden District Court granted Lima's new trial motion with respect to his 2011 conviction (the one for breaking into cars, according to his first attorney) on the grounds of ineffective assistance of counsel under Padilla.[5] With this victory in hand, Lima filed a Motion to Reopen his removal proceedings. The BIA granted the motion on November 15, 2011, and remanded the matter to the IJ.

The IJ resumed proceedings on December 8, 2011, acknowledging as he did that one of Lima's convictions had been vacated since he entered the order of removal. DHS was not idle, however, and served Lima with a new NTA at this hearing. This

_____

[5] Whether Lima was retried and, if so, the outcome of that trial, does not appear in the record. Neither party's brief satiates our curiosity in this regard.

second NTA alleged Lima's removability under INA § 237(a)(2)(A)(i) because he had been convicted of a single crime involving moral turpitude, for which a sentence of one year or longer could have been imposed, within five years of his admission to the United States. This second NTA refers to his 2009 conviction for breaking and entering a house.

Unlike the first go-round, this time Lima denied that he was removable. He requested another continuance to give him additional time to file a motion to vacate his 2009 conviction. DHS objected, stating that the second NTA did not set forth any new allegations and simply charged Lima as removable based on his 2009 conviction alone. DHS stated that Lima's counsel "should have been very well aware that was coming" and took the position that Lima already "had ample opportunity to have both these charges vacated."

The IJ agreed with DHS and denied Lima's motion to continue. The IJ suggested that Lima reserve his right to appeal and "do the same thing that [he] did the last time," i.e., seek to have the remaining conviction vacated while his appeal was pending.[6] He proceeded to find Lima removable by clear and convincing evidence in light of his previous concession that both

_____

[6] Despite counsel's statement that he had previously filed a motion to vacate the 2009 conviction and was awaiting a hearing, the record is silent as to the outcome of that hearing. We expect defense counsel would have notified us and/or filed another motion to reopen with the BIA had it been allowed. As it stands, however, the only evidence in the record is that the 2009 conviction remains.

-7-

of his criminal convictions were for crimes involving moral turpitude.

Lima filed a second appeal with the BIA. He contended this time that the government failed to prove by clear and convincing evidence that his December 2009 conviction was for a crime involving moral turpitude. In his view, the government was required to present evidence that the felony he intended to commit after breaking into the house was itself a crime involving moral turpitude. Because the government presented no evidence as to the nature of the contemplated follow-up crime, Lima argued that it failed to prove his conviction was in fact for a crime involving moral turpitude.

Notably, Lima did not claim the IJ abused his discretion in denying the motion to continue, or that the outcome of the immigration proceedings would have been any different had he been given the extra time he sought. He did not complain that his due process rights had been violated in any respect. Further, Lima lodged no argument that it was improper for his former counsel to have admitted the factual allegations contained in the original NTA, that the 2009 conviction did not involve moral turpitude, or that he was not removable as charged in the original NTA. Neither did he contradict his first attorney's statement that his 2009 conviction was predicated upon his breaking and entering a house.

The BIA found it significant that, although Lima was

-8-

challenging his removability on the grounds that his 2009 conviction was not for a crime involving moral turpitude, his prior counsel had already conceded that both the 2009 and 2011 convictions were for crimes involving moral turpitude, rendering Lima removable. The BIA held Lima to these concessions and affirmed the removal order.

Lima's timely petition to this Court followed.

## II. DISCUSSION

### A. Standard of Review

The BIA did not simply adopt the IJ's decision as its own, but instead affirmed after providing its own analysis. Accordingly, we focus our review on the BIA's decision rather than the IJ's. López v. Holder, 740 F.3d 207, 210 (1st Cir. 2014).

We review questions of law de novo, including the BIA's conclusion that a noncitizen's criminal conviction constitutes grounds for removal. Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013). Nevertheless, we will defer to the BIA's reasonable interpretations of the INA, "including its determination that a particular crime qualifies as one of moral turpitude, unless that interpretation is arbitrary, capricious, or clearly contrary to law." Da Silva Neto v. Holder, 680 F.3d 25, 28 (1st Cir. 2012) (internal quotation marks omitted); see also Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).

Factual findings, by contrast, are reviewed deferentially under the substantial evidence standard, "meaning that we uphold those determinations unless 'any reasonable adjudicator would be compelled to conclude the contrary.'" Urizar-Carrascoza v. Holder, 727 F.3d 27, 31 (1st Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)(B)). While the ultimate question of removability is a question of law, we apply this deferential review to the fact-based component of the inquiry into a noncitizen's removability based upon his concessions.  Id. at 32 (finding noncitizen's concession of removability satisfied substantial evidence standard).

## B. Analysis

Lima petitions for review of the BIA's finding that he is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).  That statute provides, in pertinent part, that any noncitizen who "(I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."  8 U.S.C. § 1227(a)(2)(A)(i).  The BIA, after considering the evidence, determined that Lima was removable based on his first attorney's concession of removability.  It is with this finding that we begin.

## 1. Lima's Words - Concessions of Removability

We first account for Lima's words in the proceedings below.  As noted, Lima's initial attorney conceded not only that he

-10-

was removable for having been convicted of two crimes involving moral turpitude, but also that his 2009 conviction was for breaking and entering a house. And in Lima's brief filed with the BIA in connection with his first appeal, successor counsel conceded his removability for having been convicted of two crimes involving moral turpitude. On petition to this Court, instead of telling us why we should not hold him to the concessions of removability, Lima spends most of his brief arguing that his 2009 conviction was not for a crime involving moral turpitude and, therefore, he is not removable under INA § 237(a)(2)(A)(i).

DHS takes a different view. It asserts, first of all, that Lima is bound by his admissions through counsel that (1) his 2009 conviction was for a crime involving moral turpitude, and (2) that he is removable. It additionally argues that because Lima did not challenge removability before the IJ in the initial proceedings or before the BIA in his first appeal, it is too late for him to do so now. Thus, DHS asks us to uphold the BIA's conclusion that Lima's 2009 conviction renders him removable.

To resolve this petition, we must determine whether the BIA erred when it refused to disregard Lima's concessions. And, regardless of our answer to this question, we must then consider whether the BIA's finding of removability was supported by substantial evidence in the record. We begin with Lima's concessions.

-11-

*(a) Binding Concessions*

As we have noted, the BIA held Lima to his first attorney's admission of removability based on Lima's convictions for two crimes involving moral turpitude, and found him removable on that basis.[7] In actuality, the record reveals that Lima made several separate admissions bearing on his removability. His initial attorney submitted written pleadings admitting to the charges in the first NTA, and he stated before the IJ that the two crimes of conviction were ones involving moral turpitude. This attorney also stated, on the record, that the 2009 conviction arose out of Lima's having broken into a "house."[8] And after changing attorneys, even his new counsel admitted Lima's removability in the initial appeal to the BIA.

Generally speaking, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992) (internal quotation marks omitted). And "an admission of counsel during trial is binding on the client" if, in context,

---

[7] The BIA also noted that in order to be removable for the commission of a single crime involving moral turpitude, that crime must have been committed within five years of his admission to the United States. Lima does not contest that the offense occurred within five years of admission.

[8] Neither party has remarked upon this concession.

-12-

it is "clear and unambiguous." <u>Levinsky's, Inc.</u> v. <u>Wal-Mart Stores, Inc.</u>, 127 F.3d 122, 134 (1st Cir. 1997).

These rules hold true in the immigration context. <u>Leblanc</u> v. <u>I.N.S.</u>, 715 F.2d 685, 694 (1st Cir. 1983). Where a noncitizen fails to demonstrate that his attorney's conduct was so egregious as to "warrant releasing [him] from his attorney's concessions," those admissions are binding upon him. <u>Karim</u> v. <u>Mukasey</u>, 269 Fed. App'x. 5, 6-7 (1st Cir. 2008). Furthermore, where a litigant has advanced no grounds to revisit a concession of removability, we have held that the concession is both binding on the noncitizen and establishes sufficient grounds for finding him removable. <u>Karim</u> v. <u>Gonzales</u>, 424 F.3d 109, 111-12 (1st Cir. 2005).

Lima's assertion to this court that his 2009 conviction is not for a crime involving moral turpitude cannot undo the clear and unambiguous concessions both of his attorneys have made to the opposite effect. Indeed, Lima does not claim that his first attorney's admissions amounted to the type of "egregious circumstances" that would be necessary for us to set them aside. He fails to even address successor counsel's concession of removability in his first brief to the BIA.

Simply put, Lima offers no substantial reason why we should free him from his concessions of removability beyond his assertion that he wishes to amend his pleadings. Our review of the

-13-

record leads us to the ineluctable conclusion that his attorneys' concessions of removability were considered tactical decisions made because Lima did not have a meritorious defense to the charges of removability. Indeed, the pleadings submitted during the March 17, 2011 hearing clearly indicate that Lima's counsel conceded removability with the intention of then applying for relief from removal.

We have previously stated that "[i]t is not unusual or egregious for counsel to make tactical decisions that ultimately fizzle and redound to the client's detriment." Leblanc, 715 F.2d at 694. Nor does such a tactical decision constitute ineffective assistance of counsel (a claim which, by the way, Lima does not make) even when it turns out to have been less than optimal. Id. We conclude, therefore, that Lima has failed to demonstrate that his attorneys' concessions of removability were so egregious as to "warrant releasing [him] from [those] concessions." Karim, 269 Fed. App'x. at 6-7. Therefore, like the BIA, we too hold Lima to the words of his attorneys.

Having reached this conclusion, we now turn to whether the BIA properly relied exclusively on these concessions and the admissions of removability in finding Lima removable.

(b) *Concessions as Sufficient Evidence of Removability*

The government bears the burden of establishing the facts showing that a noncitizen is removable by "clear, unequivocal, and

-14-

convincing evidence." <u>Urizar-Carrascoza</u>, 727 F.3d at 32; 8 U.S.C. § 1229a(c)(3)(A); 8 C.F.R. § 1240.8(a). It has been further provided by regulation that

> If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent.

8 C.F.R. § 1240.10(c). Thus, although the government must establish the facts to support a finding of removability, we have found that an IJ may apply 8 C.F.R. § 1240.10(c) to determine that removability has been established based on the noncitizen's admissions. <u>Urizar-Carrascoza</u>, 727 F.3d at 33; 8 C.F.R. § 1240.10(c); <u>see</u> <u>also</u> <u>Karim</u>, 269 Fed. App'x. at 6-7 (explaining that an IJ may rely on a noncitizen's pleadings to determine removability).

Our sister circuits have reached similar conclusions. In <u>Selimi</u> v. <u>I.N.S.</u>, the Seventh Circuit held that the government was relieved of its burden to prove removability where the noncitizen conceded removability because the concession "was in the nature of a judicial admission, and such an admission has the effect of withdrawing the issue from controversy." 312 F.3d 854, 860 (7th Cir. 2002). Along these same lines, the Ninth Circuit has held that an IJ may rely on a noncitizen's counsel's concessions of removability and that "no further evidence concerning the issues of

-15-

fact admitted or law conceded is necessary." Perez-Mejia v. Holder, 663 F.3d 403, 414 (9th Cir. 2011).

The Second Circuit's opinion in Hoodho v. Holder is particularly illuminating here. 558 F.3d 184 (2d Cir. 2009). That court rejected a petitioner's argument that, even though he had conceded removability based on his criminal record, the IJ must independently examine that record to determine whether he was, in fact, removable. Id. at 191. In doing so, the Second Circuit held that such admissions of removability "are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record." Id. The court explained that "the acceptance by the IJ of a plausible concession of removability is an unremarkable feature of removal proceedings." Id. at 187. Thus, the Second Circuit held that a petitioner may not take back a concession of removability when, "in hindsight, it might have been preferable for him to have contested removability" instead. Id.

We find the reasoning of our sister circuits persuasive and apply it here. Indeed, holding noncitizens to concessions made by counsel fits comfortably within our well-established rule in civil litigation that "a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation." Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010). Lima's concessions amounted to binding judicial

-16-

admissions, upon which the IJ permissibly relied in determining removability.

Although this would appear to bring the discussion to an end, Lima retorts by arguing that whether or not a crime involves moral turpitude is a question of law that he may not concede. In support of this proposition, he cites the Third Circuit's holding that the "legal classification of prior convictions is not a factual proposition susceptible of admission by a litigant." Garcia v. Att'y Gen. of the United States, 462 F.3d 287, 290 n.6 (3d Cir. 2006). Lima's reliance on the Third Circuit rule is misplaced. We do not need to address this rule, which appears to be inconsistent with First Circuit precedent, because Lima's concession was both of fact and law. One of the factual concessions was that Lima's prior conviction for breaking and entering was of a house. The BIA was entitled to rely on that.

In light of Lima's admission that his 2009 conviction resulted from his breaking into a house, we find that the BIA's conclusion that Lima's 2009 conviction rendered him removable was not arbitrary, capricious, or clearly contrary to law. To sum up, the BIA did not err in holding Lima to his attorneys' concessions of removability, nor did it abuse its discretion in determining that Lima was removable based upon his 2009 conviction.

## 2. **Lima's Silence**

Moving on, we must now account for Lima's previous silence on two supposed due process violations. First, Lima contends that the IJ denied him due process by denying his second attorney's request to amend the original pleadings. He says this is so because the IJ ignored counsel's "plausible" and "sufficient" explanations for requesting to amend the pleadings. See Karim, 424 F.3d at 111 (stating that "[w]here no plausible reason is offered for a request [to amend the pleadings], the word 'no' is plainly sufficient").

Second, Lima argues that the IJ abused his discretion, resulting in a denial of due process, by denying his request for a continuance to give him a further opportunity to vacate his 2009 conviction. Specifically, Lima contends that he showed good cause, and that his request should have been granted pursuant to applicable regulations. See 8 C.F.R. §§ 1003.29 and 1440.6 (permitting an IJ to grant a continuance for good cause shown). We, however, cannot decide these particular claims.

It is well-established that this Court may only review a final order of removal if "the [noncitizen] has exhausted all administrative remedies available to the [noncitizen] as of right." 8 U.S.C. § 1252(d)(1); Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013). We do make an exception for due process claims "of the kind the BIA could not adjudicate because of their predominately

-18-

constitutional character" since the BIA is "without jurisdiction to adjudicate purely constitutional issues." Ravindran v. I.N.S., 976 F.2d 754, 762 (1st Cir. 1992). However, "[w]hen constitutional claims 'involve procedural errors correctable by the BIA, applicants must raise such claims as part of their administrative appeal.'" Kandamar v. Gonzales, 464 F.3d 65, 71 (1st Cir. 2006) (quoting Capric v. Ashcroft, 355 F.3d 1075, 1087 (7th Cir. 2004)).

Lima's objections to alleged procedural errors, repackaged as due process claims, fall squarely in the latter category of due process claims. Both of his claims center on rulings that fell within the IJ's discretionary decision-making authority, and which, if in error, could have been corrected by the BIA. See, e.g., O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152 (1st Cir. 2004) (denial of request to amend pleadings reviewed for abuse of discretion); Sheikh v. Holder, 696 F.3d 147, 149 (1st Cir. 2012) (denial of continuance reviewed for abuse of discretion). Claims of this nature are not exempted from the exhaustion requirement.

Our review of the record makes plain that Lima's appeal to the BIA failed to raise any argument whatsoever regarding the IJ's denial of his sought-after continuance or his request to amend the pleadings. Lima's silence precludes him from bringing those

claims before us now.  <u>Kinisu</u>, 721 F.3d at 34.[9]  Accordingly, Lima has failed to exhaust his administrative remedies with respect to his due process claims, and we refuse to consider them.

### III. CONCLUSION

Having accounted for both Lima's words and his silence, we see no basis for reversal in this record.  We, therefore, **deny** the petition for review.

---

[9] Parenthetically, Lima's putative due process claims strike us as nothing more than attacks on the IJ's discretionary decisions "clothed in constitutional garb," presenting "no substantial constitutional question."  <u>Bernal-Vallejo</u> v. <u>I.N.S.</u>, 195 F.3d 56, 63 (1st Cir. 1999).