# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2022

Lyle W. Cayce
Clerk

No. 22-10100

Lou Liggins,

*Plaintiff—Appellant*,

*versus*

Duncanville, Texas; Nathan Roach,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-654

Before Clement, Duncan, and Wilson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Four years ago, Lou Liggins was having a "severe mental health episode" and voicing "suicidal ideations." So, his mother called the police. When the Chief of Police arrived, he ordered his officers to enter the Liggins's home and, in the mix-up, Liggins was shot. Because the Chief's decision to intervene wasn't based on a deliberate indifference to any risk to Liggins's rights, we AFFIRM.

No. 22-10100

# I

On March 20, 2018, a Duncanville police officer shot Lou Liggins in the stomach. Earlier that day, Liggins "stopped taking [his] medications" and started having "a severe mental health episode." After he "express[ed] suicidal ideations," Liggins's mother called his health care providers. They "advised [her] to call 911." So, she did. Shortly after, Duncanville Chief of Police Robert Brown arrived on the scene. There, he learned from Liggins's mother that her son, although "unarmed," was having a mental breakdown inside the home. Chief Brown then "assur[ed]" Liggins's mother that a "negotiating team" would be brought in and that the police "would not shoot Lou." Sometime later, and without negotiators, Chief Brown ordered his officers to enter the Liggins's home. Once inside, an officer shot Liggins after he reached for a cell phone. Liggins was rushed to the hospital and, after "emergency surgery," survived.

Now, Liggins is suing the City of Duncanville for Chief Brown's decision, namely "order[ing] officers . . . into the house." Liggins argues Chief Brown was a "policymaker" who—with a "callous disregard for individuals suffering from mental health episodes"—caused the "deprivation" of Liggins's Fourth Amendment rights. The district court wasn't convinced for two reasons. One, Chief Brown couldn't be a policymaker, per *Monell v. Department of Social Services*, because he didn't have "final authority to establish municipal policy." 436 U.S. 658 (1978). Two, Liggins couldn't show that, when Chief Brown gave the order, he was deliberately indifferent to the possible violation of Liggins's constitutional rights. Instead, Liggins relied exclusively on "conclusory" allegations. Following a dismissal, Liggins appealed. Before us, he maintains that he adequately pled facts to support Chief Brown's policymaker status and, in turn, *Monell* liability for the City of Duncanville. He also asks that we

reconsider our application of the "relation back" doctrine to his "John Doe pleadings."

## II

We review a Rule 12(b)(6) dismissal de novo. *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On review, we take all "well-pleaded facts in the light most favorable to the nonmoving party." *Calogero*, 970 F.3d at 580 (citation omitted).

## A

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must prove that he was deprived of a federally protected right, including constitutional protections, "pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 691). Per *Monell*, the plaintiff must target a "policy"—known by or created by a "policymaker"—that was the "moving force" behind the plaintiff's harm. *Id.* at 541–42 (citations omitted). Because the other two requirements are dispositive in this case, we don't address the "policymaker" element any further.

For the "moving force" element, a plaintiff must "show[] either that the policy itself was unconstitutional" or that it "was adopted with deliberate indifference to the known or obvious fact" that a specific constitutional violation would follow. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (citation and quotations omitted). Under the deliberate indifference framework, a party must prove there's a "causal link" between the policy and their harm, and that the defendant had the "requisite degree

of culpability." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Culpability, in this context, is a complete disregard of "the risk that a violation of a particular constitutional . . . right [would] follow the decision." *Id.* at 411. That's a "high standard." *Valle*, 613 F.3d at 542. A "showing of simple or even heightened negligence will not suffice." *Id.* (quoting *Brown*, 520 U.S. at 407).

As for the policy requirement, a party may point to a formal declaration, an informal custom, or, sometimes, a "single decision." *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000). But, the "single decision" exception is "extremely narrow" and only applies in "rare circumstances." *Valle*, 613 F.3d at 542 (citation omitted); *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 n.51 (5th Cir. 2019). To warrant application, the constitutional harm in question must've been the "plainly obvious" consequence of the actor's single decision. *See Brown*, 219 F.3d at 461. In practice, that means the decision must've been made despite a very "high degree of *predictability* concerning the consequences of the challenged decision." *Id.* at 460 (emphasis added). That's a "stringent standard[]" which requires "unmistakable culpability and clearly connected causation." *Id.* at 461.

Here, Liggins argues that Chief Brown's single decision—ordering his officers to enter the Liggins's home—was the "moving force" behind Liggins's injuries. Liggins admits Chief Brown's order wasn't patently unconstitutional, so instead he contends that it was adopted with a deliberate indifference to Liggins's rights. But, Liggins's claim doesn't pass muster for two reasons: predictability and culpability.

First, it wasn't "highly predictable" that a Fourth Amendment violation would result from Chief Brown's order. The single decision exception—especially when tied to deliberate indifference—applies in rare

and narrow scenarios. *See Valle*, 613 F.3d at 542. We have only entertained the theory in a few cases, including *Brown*, 219 F.3d 450. But, in *Brown*, the outcome was the "highly predictable consequence[]" of the municipal actor's decision. 219 F.3d at 462–63. There, a sheriff failed to train an officer known to have an "exuberant and reckless background" on and off the job. *Id.* So, the sheriff was on clear "notice" that placing him on duty with "*no* training" and "*no* supervision" could lead to an excessive force incident. *Id.* But, this case isn't like *Brown*. Instead, it tracks closer to *Valle v. City of Houston*. In *Valle*, a police officer ordered his agents to enter the home of a mentally ill man. *Id.* at 539–40. After a brief scuffle, the man was shot and killed. *Id.* There, we found there wasn't evidence of deliberate indifference because "at least some training" had been provided to the officers and, more importantly, there wasn't a "pattern of similar violations" to rely on. *Id.* at 547–48.

Although a "pattern of misconduct is not required" to prove predictability, *Brown*, 219 F.3d at 460, "[w]e have stressed that a single incident is usually insufficient to demonstrate deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (finding deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations"); *Valle*, 613 F.3d at 548–49 (finding no deliberate indifference due to a lack of a "pattern of actual violations sufficient to show deliberate indifference"). After all, repetition may be the only thing that puts a policymaker on "sufficient notice" that a constitutional violation may spring from their single decision. *Brown*, 219 F.3d at 460. Of course, we don't "suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference." *Davis*, 406 F.3d at 385. Instead, we emphasize the difficulty of proving up such claims without any evidence of a pattern.

Here, Liggins provides no genuine evidence of a pattern or any other kind of notice. Instead—to prove predictability—Liggins relies on "well-known studies and literature" to argue Chief Brown's intervention was contrary to accepted police practices. But, bald factual assertions coupled with informational literature isn't enough to support a deliberate indifference claim—even under Rule 12(b)(6). *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

Second, Liggins can't show that Chief Brown, at the time of his order, had the "requisite degree of culpability," namely that he completely disregarded any risk to Liggins's Fourth Amendment rights. Liggins had stopped taking his prescription medication and was "suffering from a severe mental health episode." His own "health care providers advised [his mom] to call 911." Although Liggins's mother told Chief Brown her son wasn't dangerous, Liggins "was expressing suicidal ideations." So, Chief Brown—for the safety of Liggins—intervened. While Chief Brown could've waited for a "crisis intervention team," failing to do so doesn't show that Chief Brown "disregarded" any of the "obvious consequence[s]" of his decision. *Brown*, 219 F.3d at 457 (emphasis added). Difficult decisions—like sending armed officers into the home of a person suffering from suicidal thoughts—aren't easy and must be made quickly. But, making them doesn't evidence an intentional ignorance of all the associated risks. At worst, failing to wait or fully recognize the risk of harm to Liggins's rights was negligent. But, mere negligence isn't enough to prove deliberate indifference.

In *Webb*, we found a single decision by a mayor—to "begin undertaking efforts to collect on [a] judgment" against a city employee—didn't pass muster because the plaintiff couldn't "establish[]" that the single decision was the "moving force" behind his constitutional injury. 925 F.3d

No. 22-10100

at 219–20. Instead, the plaintiff merely "painted a picture of poor decisions and bureaucratic dysfunction." *Id.* at 220. The same reasoning rings true here. So, we AFFIRM. Considering our decision, we do not address the remaining elements of Liggins's *Monell* claim.

## B

The district court also found Liggins's amended filing—replacing "John Doe" with a named officer—couldn't "relate back" to the date of his original complaint per our precedent. Liggins "recognizes" that his request is "unavailable" under "the binding precedent of this Circuit," but asks anyway. Finding the argument foreclosed—and our precedent unchanged—we AFFIRM.

* * *

Chief Brown ordered his officers to intervene in Liggins's "mental health episode." As a result, Liggins was shot. But, that doesn't mean Chief Brown completely disregarded any risk to Liggins's Fourth Amendment rights. Because we agree with the district court—that this is not one of those "extreme circumstances" in which a single decision suffices for *Monell* liability—we AFFIRM.